IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA ex rel. DENNIS HERRERA, SAN FRANCISCO CITY ATTORNEY,<br><br>    Plaintiff,<br><br>   v.<br><br>ACCREDITING COMMISSION FOR COMMUNITY AND JUNIOR COLLEGES, and DOES 1-50, inclusive,<br><br>    Defendants.<br>_____ / | No. C 13-4379 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES** |

Plaintiff's motions to remand and for attorney's fees are scheduled for a hearing on November 8, 2013. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matters are appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS the motion for remand and DENIES the motion for attorney's fees.

**BACKGROUND**

On August 22, 2013, plaintiff the People of the State of California ("the People"), acting through San Francisco City Attorney Dennis Herrera, filed this lawsuit in San Francisco Superior Court against defendant Accrediting Commission for Community and Junior Colleges ("ACCJC"). The lawsuit arises out of the June 2013 decision by the ACCJC to terminate City College of San Francisco's accreditation effective July 2014. Compl. ¶ 7.

The complaint alleges that the ACCJC is a nonprofit corporation that accredits community and

junior colleges in the Western region of the United States. *Id*. ¶¶ 10, 27. The ACCJC operates under the corporate entity the Western Association of Schools and Colleges ("WASC"), and WASC is recognized by the federal Department of Education as one of six regional associations that accredit public and private schools, colleges, and universities in the United States. *Id*. ¶ 28.

The complaint alleges that community colleges are an "integral part of California's pioneering tripartite system of higher education," and "California community colleges provide educational and vocational opportunities to anyone, regardless of income or ability." *Id*. ¶ 1. According to the complaint, the "open access mandate for California community colleges has long been a part of California's educational policy[,]" and "for many years, City College of San Francisco ('City College') has embraced this open access mission, providing access to educational and vocational training for diverse ethnic and socio-economic communities in San Francisco." *Id*. ¶ 2. The complaint alleges that the ACCJC "has been an outspoken advocate of the push to eliminate the open access mandate for California's community colleges – actively supporting controversial task force recommendations and legislation that would eliminate the open access policy in favor of a narrower junior-college model focused on degree completion." *Id*. ¶ 5.

According to the complaint, "while publicly opposing City College's open access mission, the ACCJC was in the midst of evaluating City College for reaffirmation of its accreditation." *Id*. ¶ 6. On or around June 6, 2012, during ACCJC's evaluation of City College for reaffirmation of its accreditation, ACCJC imposed a "show cause" sanction on City College based on ACCJC's determination that City College was only partially compliant with accreditation standards. *Id*. ¶¶ 88, 90. As a result of the sanction, City College was required to submit a "Show Cause Report" demonstrating why its accreditation should not be withdrawn. *Id*. ¶ 91. The complaint alleges that the ACCJC's decision to put City College on "Show Cause" status was "unusual and suspicious given City College's success as an educational institution and the fact that the College had never been placed on any sanction in the past." *Id*. ¶ 102.

On March 15, 2013, City College submitted the required Show Cause Report. *Id*. ¶ 92. On or around June 7, 2013, the ACCJC voted to terminate City College's accreditation effective July 31, 2014. *Id*. ¶ 94. The complaint alleges that "loss of accreditation would be a death blow to City College"

because the college "would become ineligible for state and federal funds [and] would likely be forced to close. " *Id.* ¶ 96. The complaint alleges that the ACCJC has created a conflict of interest by evaluating City College while actively lobbying the Board of Governors of the California Community Colleges and the California Legislature to end the open access policy. *Id.* ¶ 7. The complaint alleges that "by ignoring the conflict created by its actions, undertaking an evaluation process that violated several provisions of federal law, and ultimately voting to terminate City College's accreditation in retaliation for City College having embraced and advocated a different vision for California's community colleges than the ACCJC itself, the ACCJC violated California's Unfair Competition Law." *Id.* ¶ 8.

The complaint alleges a single claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("Unfair Competition Law" or "UCL"). The complaint alleges the following:

"a. ACCJC engaged in unlawful, unfair and/or fraudulent business acts or practices, and violated its own conflict of interest policy by:

I. evaluating City College while embroiled in a public political fight over the proper mission, vision and role of community colleges in California;

ii. appointing President Barbara Beno's husband to serve on the 2012 Evaluation Team; and

iii. filling the majority of positions on the 2012 Evaluation Team and 2013 Show Cause Visiting Team with individuals affiliated with districts and organizations that supported the SSTF[1] recommendation and/or S.B. 1456[2] and shared the ACCJC's vision of the role

---

[1] In January 2011, the Board of Governors of the California Community Colleges appointed 21 individuals to serve on a Student Success Task Force ("SSTF") charged with examining strategies and developing recommendations for student success. *Id.* ¶ 61. The complaint alleges that the SSTF's "goals and vision were aligned with [a] narrow vision of 'student success'" and that City College "stakeholders . . . believed the [SSTF's] recommendations were inconsistent with the institution's historic open access mission." *Id.* ¶¶ 61, 67.

[2] S.B. 1456, the Seymour-Campbell Student Success Act of 2012, was introduced on February 24, 2012, and after a number of amendments, was signed by the Governor on September 27, 2012. *Id.* ¶¶ 73, 84. The complaint alleges that as introduced, S.B .1456 included several recommendations by the SSTF that City College and other open access advocates found "highly objectionable." *Id.* ¶ 74. The complaint contains numerous allegations regarding "City College's successful advocacy in the fight over SB 1456." *Id.* ¶¶ 73-84.

3

of community colleges.

b. ACCJC violated 34 C.F.R. section 602.15(a)(3) by failing to ensure that academic personnel were reasonably represented on CCSF's 2012 Evaluation Team and the 2013 Show Cause Visiting Team.

c. ACCJC violated 34 C.F.R. section 602.15(a)(6) by failing to have clear and effective controls against conflicts of interest and the appearance of conflicts of interest and by appointing President Barbara Beno's husband to serve on CCSF's 2012 Evaluation Team.

d. ACCJC violated 34 C.F.R. section 602.18(e) by failing to inform institutions, including CCSF, whether recommendations made by the Commission indicate noncompliance with an accreditation standard or an area for improvement.

e. ACCJC sanctioned City College and voted to terminate City College's accreditation in retaliation against City College because City College embraced and publicly supported an 'open access' vision for community colleges that differed from the vision supported by ACCJC and because City College actively opposed policies and legislation championed by the ACCJC.

f. ACCJC violated 20 U.S.C. section 1099b(a)(4)(A) and 34 C.F.R. section 602.18 by applying and enforcing accreditation standards in a manner that subverted, rather than respected, the broad open access mission set forth in California legislative declarations and embraced by City College."

*Id*. ¶ 134(a)-(f). The complaint also alleges that the ACCJC's practices "constitute unfair business practices because they offend established public policy and cause harm that greatly outweighs any benefits associated with those practices." *Id*. ¶ 135.

On September 20, 2013, ACCJC removed the case to this Court asserting federal jurisdiction pursuant to 20 U.S.C. §1099b(f) and 28 U.S.C. § 1331. Now before the Court are plaintiff's motions for remand for lack of federal jurisdiction and for attorney's fees.

**LEGAL STANDARD**

A suit filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a); *Snow v. Ford Motor Co.,* 561

4

F.2d 787, 789 (9th Cir. 1977). A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand sua sponte or on motion of a party, and the party who invoked the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). The removal statute is strictly construed against removal jurisdiction and doubt is resolved in favor of remand. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979).

The existence of federal jurisdiction on removal must be determined on the face of the plaintiff's complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908). A "cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co v. Taylor*, 481 U.S. 58, 63 (1987). There are three circumstances under which the court can find that a state law claim arises under federal law: (1) if federal law completely preempts state law, (2) if the state claim is necessarily federal in character, or (3) if the right to relief requires resolution of a substantial, disputed federal question. *Arco Environmental Remediation, L.L.C. v. Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000).

The Court may examine the entire record to determine if the real nature of the claim is federal, notwithstanding plaintiff's characterization to the contrary, when the plaintiff has, by "artful pleading," attempted to defeat defendant's right to a federal forum. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). A complainant cannot "avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." *Harper v. San Diego Transit Corp*., 764 F.2d 663, 666 (9th Cir. 1985).

Ordinarily, federal preemption is used as a defense to the plaintiff's suit; therefore it does not appear on the face of a well-pleaded complaint and does not warrant removal to federal court. *Metropolitan Life Ins. Co*, 481 U.S. at 63. "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id*. at 63-64. Where federal law completely preempts the entire subject matter of the claim, and supplants any state law claim

5

so that the only viable claim is the one created under federal law, the claim may be removed. *Id*.

# DISCUSSION

## I. Plaintiff's motion for remand

### A. Higher Education Act, 20 U.S.C. § 1099b(f)

Defendant advances several arguments in support of the contention that removal was proper on the basis of federal question jurisdiction. First, defendant contends that the Court has jurisdiction pursuant to 20 U.S.C. § 1099b(f) of the Higher Education Act ("HEA"). That statute provides:

> Notwithstanding any other provision of law, any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association recognized by the Secretary for the purpose of this title and involving the denial, withdrawal, or termination of accreditation of the institution of higher learning, shall be brought in the appropriate United States district court.

20 U.S.C. § 1099b(f). Defendant acknowledges that the plain language of Section 1099b(f) applies to civil actions "brought by an institution of higher learning," but defendant argues that "[g]iven the pervasive federal interest over accreditation decisions concerning institutions of higher learning, Congress plainly intended that Section 1099b(f)'s jurisdictional bar apply to all adverse accreditation decisions concerning institutions of higher learning." Docket No. 15 at 12:4-7. Defendant argues that "Section 1099b(f) [of the HEA] should be read to encompass all lawsuits challenging adverse accreditation decisions (to the extent it does not bar lawsuits from entities other than an institution)." *Id*. at 14:6-8. Although defendant does not explicitly argue that the HEA preempts plaintiff's state law claim, defendant contends that Title VI of the HEA provides a "comprehensive regulatory framework" within which the ACCJC makes its accreditation decisions, and that "nowhere does the HEA authorize the state to take action as a result of an adverse accreditation decision or have any input into the accreditation process." Docket No. 15 at 7:3-4. Defendant argues that "Section 1099b(f) is clearly intended to channel accreditation challenges to the federal courts in order to ensure objectivity, uniformity and consistency of ruling on issues critical to the Secretary's successful management of Title IV of the HEA," and that these policies "would be put at risk if accreditation decisions were subject to judicial scrutiny in a dozen or more state actions, each of which was applying a different set of

substantive rules and

 policies involving a local community college." *Id*. at 17:2-9.

The Court is unpersuaded by defendant's arguments. As an initial matter, to the extent that defendant suggests that the HEA completely preempts state law claims against accreditors, that argument was rejected by the Ninth Circuit in *Keams v. Tempe Technical Institute, Inc*., 39 F.3d 222 (9th Cir. 1994). In *Keams*, students brought state law negligence claims against the accreditors of a failed trade school, and the district court dismissed those claims on the ground that they were preempted by the HEA. The Ninth Circuit reversed, holding that the HEA neither expressly nor implicitly preempted state tort claims against accreditors. In so holding, the Ninth Circuit noted that "there is express preemption of state law in a number of areas" of the HEA, and "[i]t is apparent from the language of the express preemption clauses that Congress expected state law to operate in much of the field in which it was legislating." *Id*. at 225-26. The court also noted that "[t]he mere existence of a detailed regulatory scheme does not by itself imply preemption of state remedies." *Id*. at 226. The Ninth Circuit also rejected the argument – similar to that advanced by defendant here – "that state standards might be diverse, and might discourage accreditor participation in the federal program. But an equally plausible policy argument could be made to the contrary, that diversity in accrediting standards might facilitate adaptation of this federal program to local conditions." *Id*. at 226.

Defendant cites several cases for the proposition that "challenges to accreditation decisions have been filed in (or removed to) District Court, and the federal judges hearing those challenges have adopted appropriately deferential standards of review and consideration of the special expertise employed by professional accreditors like the ACCJC." Docket No. 15 at 7:15-18. However, none of the cases cited by defendant holds that the HEA provides a basis for federal subject matter jurisdiction over state law claims. *See Ambrose v. New England Ass'n of Schools and Colleges, Inc.*, 252 F.3d 488, 490-91 (1st Cir. 2001) (college students sued accrediting organization, alleging fraud, negligent misrepresentation, and violation of Maine's Deceptive Trade Practices Act; case removed on basis of diversity jurisdiction); *Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc*., 168 F.3d 1362 (D.C. Cir. 1999) (student loan recipient sued accrediting agency in federal court, alleging state law claims and federal claims under Federal Trade Commission (FTC) holder rule and Department

7

1  of Education's school-origination policy). Defendant notes that in *Armstrong* the D.C. Circuit held that
2  the plaintiff's contract-based theories of mistake and illegality were preempted because they conflicted
3  with the HEA. *See id.* at 1369. However, in *Armstrong* the D.C. Circuit also reaffirmed a prior holding
4  that the HEA does not completely preempt state law claims. *See id.* In the absence of complete
5  preemption, federal preemption is a defense and does not authorize removal to federal court.
6  *Metropolitan Life Ins. Co*, 481 U.S. at 63.

7  Defendant also does not cite any authority for the proposition that Section 1099b(f) of the HEA
8  – which applies to "any civil action brought by an institution of higher education . . . and involving the
9  denial, withdrawal, or termination of accreditation of the institution of higher learning" – provides a
10 basis for federal jurisdiction in lawsuits brought by plaintiffs who are not institutions of higher learning.
11 To the contrary, all of the cases cited by defendant were brought by institutions of higher learning
12 challenging accreditation decisions. *See, e.g., Thomas M. Cooley Law School v. American Bar Ass'n*
13 459 F.3d 705 (6th Cir. 2006) (holding § 1099b(f) provided basis for removal of lawsuit filed by law
14 school challenging accreditation decision); *Massachusetts School of Law at Andover, Inc. v. American*
15 *Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998) (holding § 1099b(f) provides federal jurisdiction over disputes
16 regarding accreditation but that there is no private right of action under the statute). Defendant asserts,
17 without support, that "Congress plainly intended that Section 1099b(f)'s jurisdictional bar apply to all
18 adverse accreditation decisions concerning institutions of higher education." Docket No. 15 at 12:5-7.
19 Defendant does not explain how this "jurisdictional bar" argument can be reconciled with the Ninth
20 Circuit's decision in *Keams*; indeed, defendant does not address *Keams* at all. Moreover, "[a] statute
21 affecting federal jurisdiction 'must be construed both with precision and with fidelity to the terms by
22 which Congress has expressed its wishes.'" *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (quoting
23 *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212 (1968)). If Congress intended Section 1099b(f) to apply
24 to any lawsuit involving adverse accreditation decisions, Congress could have said so.

26 **B. Resolution of issues of federal law**
27 Defendant also contends that the complaint raises issues that necessarily require the resolution
28 of federal law because the complaint alleges that defendant has violated numerous federal regulations

8

regarding accreditation. Defendant argues that plaintiff's complaint "directly implicates the federal regulatory scheme established by the HEA and carried out by the DOE." Docket No. 15 at 17:27-28.

To determine whether plaintiff's state law claims actually arise under federal law, the Court must determine whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Systems, Inc*., 80 F.3d 339, 346 (9th Cir. 1996) (holding there was no federal jurisdiction because "[a]lthough the complaint refers to Title VII as one basis for demonstrating that there is a public policy against employment discrimination on the basis of religious belief, the complaint also refers to the California Constitution and to the CFEHA, both of which prohibit employment discrimination on the basis of religion.").

Here, the complaint alleges that defendant has violated the UCL by engaging in unlawful, unfair and/or fraudulent business practices. A plaintiff may establish liability under the unfair and fraudulent prongs of Section 17200 without showing a violation of a separate law. *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). While the complaint alleges that defendant has violated federal regulations and statutes to establish the "unlawful" prong of the UCL claim, the complaint also alleges that defendant engaged in acts that are unfair and/or fraudulent under state law by: "I. evaluating City College while embroiled in a public political fight over the proper mission, vision and role of community colleges in California; ii. appointing President Barbara Beno's husband to serve on the 2012 Evaluation Team; and iii. filling the majority of positions on the 2012 Evaluation Team and 2013 Show Cause Visiting Team with individuals affiliated with districts and organizations that supported the SSTF recommendation and/or S.B. 1456 and shared the ACCJC's vision of the role of community colleges." Compl. ¶134(a). The complaint also alleges that defendant violated the UCL by retaliating against City College because it "actively opposed policies and legislation championed championed by the ACCJC." *Id*. ¶134(e). None of these allegations refer to or incorporate federal law,

and thus plaintiff's UCL claim does not require the resolution of a federal issue.

The Court finds instructive the Ninth Circuit's recent decision in *Nevada v. Bank of America Corporation*, 672 F.3d 661 (9th Cir. 2012). The State of Nevada, through its Attorney General, brought a parens patriae suit in state court alleging that Bank of America misled borrowers about its mortgage modification and foreclosure processes, in violation of Nevada's Deceptive Trade Practices Act ("DTPA") and in violation of an existing consent decree. Although the complaint did not allege any federal claims, within the context of the state DTPA claim the complaint alleged that the bank made misrepresentations about the federal HAMP program and violated the federal Fair Debt Collection Practices Act. The defendant removed the lawsuit to federal court, asserting jurisdiction under both the Class Action Fairness Act and federal question jurisdiction because the state law claims required the resolution of federal law. The Ninth Circuit reversed:

> The gravamen of the Complaint is that Bank of America violated Nevada's DTPA through numerous misrepresentations, some about the HAMP program, and some which also violate the FDCPA. For example, Nevada alleges that Bank of America violated the DTPA by: "promising to act upon requests for mortgage modifications within a specific period of time" and then failing to do so; giving consumers "false assurances that their homes would not be foreclosed while their requests for modifications were pending"; providing "inaccurate and deceptive reasons for denying ... requests for modifications"; and "misrepresenting that consumers [had] been approved for modifications." "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).
>
> Nor does the Complaint's reference to the FDCPA necessarily raise a substantial issue of federal law. The Nevada DTPA includes a "borrowing" provision, making it a violation of the DTPA to "[v]iolate[ ] a state or federal statute or regulation relating to the sale or lease of goods or services." Nev.Rev.Stat. § 598.0923(3). California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, contains a similar "borrowing" provision, and "California district courts have held that mere references to federal law in UCL claims do not convert the claim into a federal cause of action." *Guerra v. Carrington Mortg. Servs. LLC*, 2010 WL 2630278, at *2 (C.D.Cal. June 29, 2010) (citations omitted); *see also Garduno v. Nat'l Bank of Ariz.*, 738 F.Supp.2d 1004, 1009 (D.Ariz.2010). Bank of America concedes that the mere use of a federal statute as a predicate for a state law cause of action does not necessarily transform that cause of action into a federal claim, but asserts that this case is an exception to the general rule because it poses substantial questions about the scope and applicability of the FDCPA—specifically, whether the FDCPA applies at all to mortgage loan servicers. However, the Supreme Court has cautioned against finding federal question jurisdiction on the ground that a case presents a novel issue of federal law: "We do not believe the question whether a particular claim arises under federal law depends on the novelty of the federal issue." *Merrell Dow*, 478 U.S. at 817, 106 S.Ct. 3229. Therefore, Nevada's glancing

> reference to federal law is insufficient to confer federal jurisdiction over Nevada's state law claims.

*Nevada*, 672 F.3d at 675. Here, as in *Nevada*, although the complaint "borrows" federal regulations and statutes as predicates for the "unlawful" prong of the UCL claim, the UCL claim is also supported by alternate and independent state law theories, and thus the UCL claim is not transformed into a federal claim.

The cases cited by defendant are inapposite. In *California ex rel Lockyer v. Dynegy*, 375 F.3d 831 (9th Cir. 2004), the State brought state court actions against wholesale electricity suppliers alleging that the power companies violated the UCL by fraudulently failing to deliver reserve energy. The companies removed the cases asserting federal question jurisdiction. The district court denied the plaintiff's motion for remand, reasoning that the UCL claim was necessarily federal in character because the UCL claim sought to enforce federal tariffs. *Id*. at 839. The Ninth Circuit affirmed, holding "[t]he state lawsuit turns, entirely, upon the defendant's compliance with a federal regulation. The tariff defines the companies' contractual obligation with respect to the conduct at issue. Absent a violation of the FERC-filed tariff, no state law liability could survive." *Id*. at 841.

The other primary case cited by defendant, *County of Santa Clara v. Astra USA Inc.*, 401 F. Supp. 2d 1022 (N.D. Cal. 2005), involved claims by the County that the defendant pharmaceutical manufacturers overcharged public health institutions for medications used for medical care for the poor. The County filed suit in state court seeking an accounting and alleging violations of the UCL and false-claims act, and the defendants removed asserting diversity and federal question jurisdiction. *Id*. at 1024. The district court held that there was federal question jurisdiction because "[a]ll the claims asserted by Santa Clara explicitly involve allegations that it was victimized by drug prices in excess of those allowed under a federal statute, 42 U.S.C. [§]256b, and under the Pharmaceutical Pricing Agreement, a contract between the federal government and the manufacturers. . . . The contract, by its own terms, must be 'construed in accordance with Federal common law.'" *Id*. at 1025. With regard to the UCL claim, the court noted,

> If, for example, Santa Clara had alleged that defendants were *not* required to provide the discounts yet falsely claimed to be providing them nevertheless, its claim of unfair or fraudulent acts would not have turned on a federal issue. Santa Clara, however, did not assert any such thing. The only reasons it has given for believing

11

>that defendants behaved unfairly or fraudulently were that they failed to give required discounts. The Section 17200 claim therefore requires determination of whether defendants violated any federal statutory or federal contractual obligation to provide the discounts and, if they did, by how much they overcharged.

*Id*. at 1026 (emphasis in original).

Thus, in both *Dynegy* and *Astra*, the plaintiffs' state law claims could only be litigated by determining federal issues. Here, plaintiff's UCL claim can be resolved on alternative and independent state law theories regarding whether defendant has engaged in conduct that is unfair or fraudulent under state law.

### C. Interruption of pending administrative review

Finally, defendant argues that remanding the action would interrupt and interfere with an ongoing administrative review of City College. Defendant has submitted evidence showing that after the termination decision was announced, City College requested a formal review of the decision, and that the administrative review process is underway. *See* Ward Decl. Ex. A (City College request for administrative review). Defendant asserts that "[w]hile City College has initiated – and is proceeding with – the review process, and perhaps a subsequent appeal, plaintiff, an unrelated third party, has commenced the instant action with the specific intent of derailing the very administrative review mandated under the HEA." Docket No. 15 at 9:17-20. Defendant argues that "[t]o expect City College to follow the administrative procedures mandated under the Act and to subject any challenge brought by the institution to federal jurisdiction, and, at the same time, allow a state court to entertain a third party claim that would effectively bypass those administrative procedures and replace longstanding federal accreditation jurisprudence with its own, would not only prevent the institution from controlling its own destiny, it would create an untenable risk of incongruous results." *Id*. at 15:25-16:3.

Plaintiff disputes that remanding this action would disrupt the ongoing administrative review, and plaintiff asserts that "[t]he People are not representing City College or any college specifically and do not seek to litigate the merits of ACCJC's decisions, but instead challenge the fairness of the ACCJC's business practices in California." Docket No. 19 at 5:8-10. Plaintiff also asserts that defendant's argument is illogical because defendant does not explain why remanding this case would

12

interfere with the administrative review but litigating this case in federal court would not.

The Court finds that defendant's arguments about the pending administrative review are misdirected because they do not go to whether this Court has jurisdiction over plaintiff's complaint. It is defendant's burden to establish that the removal was proper, and defendant has not met its burden.

## II.  Plaintiff's motion for attorney's fees

District courts have wide discretion regarding whether to award attorney fees in an order to remand. *See Moore v. Permanente Medical Group*, 981 F.2d 443, 447 (9th Cir. 1992); *see also* 28 U.S.C. § 1447(c). Although the Court finds that the removal was improper, on this record the Court does not find that defendant lacked an objectively reasonable basis for removal.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS plaintiff's motion for remand and DENIES plaintiff's motion for attorney's fees. Docket Nos. 8 & 9.

**IT IS SO ORDERED.**

Dated: November 4, 2013

SUSAN ILLSTON
United States District Judge

13